VIOLA OUIMETTE BREARD *vs.* EVA I. C. OUIMETTE.

JUNE 22, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J.  This cause is before us on complainant's appeal from a final decree denying and dismissing the amended bill of complaint and dissolving the restraining order theretofore entered.  At the hearing in this court the death of Eva I. C. Ouimette was suggested and Elsie M. Mitschka was substituted in her place as the party respondent.  Hereinafter, however, reference to the respondent will mean Eva I. C. Ouimette.

The amended bill alleges in substance that complainant is the daughter of Dolphis J. A. Ouimette and Isabella A. Ouimette, both deceased, and that respondent was the second wife of Dolphis; that during their lifetime Dolphis and Isabella Ouimette were the joint owners of a tract of land in the city of Warwick in this state; and that in 1935 they gave complainant a certain portion of said land.

Complainant further alleges that in conjunction with the giving of such portion Dolphis and Isabella Ouimette made an arrangement with her whereby they gave certain materials and complainant caused much labor to be furnished for the construction thereon of a four-room cottage; that the cottage was erected and by agreement with her parents became the property and home of complainant.  It is also alleged that complainant and her family entered into possession of said premises and for more than ten years have remained in uninterrupted, quiet, peaceful and actual seizin and possession thereof and have made valuable improve-

ments thereon; that her mother predeceased her father; that the latter married respondent in 1944; and that he died May 7, 1946.

Complainant also alleges that on September 24, 1945 her father made a voluntary conveyance of the premises above described to himself and Eva I. C. Ouimette as joint tenants, and that respondent, knowing of the ownership of said premises by complainant, threatens to sell the property and has commenced an action of trespass and ejectment against her for the purpose of recovering possession thereof.

Complainant prays that respondent be temporarily and permanently enjoined from selling the above-described premises and from prosecuting any action at law to obtain possession thereof; that a decree may be entered establishing complainant's title to the premises; that the court order the execution and delivery of such instruments as may be necessary or advisable to remove all clouds upon her title; that the court decree that respondent holds said premises as trustee for complainant and order the execution and delivery of a deed thereof to her; that she may be granted a lien upon said premises to the extent of the present value thereof; and finally that she may have specific performance of the agreement of her father in connection with the ownership of the premises. The bill also contains a prayer for general equitable relief.

Although the transcript of testimony is lengthy, the evidence of complainant herself was comparatively brief. She testified that after her marriage she went to live with her husband in Olneyville; that she wanted to be near her mother, who was in ill health; that her father told her if she came back to Warwick to be near her mother "he would build me a house * * * and give it to me"; that she talked with her father about the kind of a house that was to be built and he showed her certain blueprints of the proposed cottage; and that she picked the spot because "It was nearer to my mother than the other part." It is to be noted

that while complainant claimed that her father gave her the house on condition that she would come back to Warwick to be near her mother, at least six of her witnesses stated that he said he was going to give the house to complainant as a "wedding present." This claim was not asserted by complainant herself.

Respondent testified that her husband never told her he had given a house to Viola as a wedding gift. He told her that he had given her a bedroom suite as a wedding present and that, speaking of the cottage, "He used to say he wished they would move out so that he could sell it, or so that he could move in himself." She testified further that complainant paid a rent of $10 a month for the cottage from a period of a few months after they moved in, during the rest of respondent's husband's life, and for one month after his death.

Evidence for complainant further showed that no deed of the cottage was ever given to her nor requested by her; that the receipts given to her husband indicated that the monthly payments were for "Rent" and that they were so marked; that one of the receipt books had a notation indicating that back rent was due in the amount of $40, which sum was later paid; that taxes and insurance on the property were paid by complainant's father; and that registration of the property with the O.P.A. Area Rent Office showed her father as the landlord and her husband as the tenant at a rent of $10 per month.

Complainant's husband testified that the monthly payments were made to reimburse her father for the amount he had paid for materials in the construction of the cottage, but the evidence showed that the receipt books were purchased by her husband; that the receipts were clearly marked for "Rent"; and that neither complainant nor her husband ever objected to the receipts in that form.

A witness for respondent testified that she had talked about the cottage with complainant, who stated it was too

small, and when she asked her why she did not buy it complainant said she could not buy it because it was not for sale. Respondent also testified that when complainant told her the house was too small she asked her why she did not buy it, and she replied: "Dewey [complainant's husband] asked my father to buy the house from him and he won't sell it, so that Dewey won't ask no more."

A careful reading of the transcript discloses that the evidence presented in behalf of complainant and that of respondent and her witnesses is conflicting and irreconcilable. In reaching his decision it was necessary for the trial justice to weigh the evidence, consider the credibility of the witnesses, and determine what weight he should attach to their respective testimony.

In commenting on the credibility of certain witnesses the trial justice in his rescript stated that "the Court could put no credence in their testimony whatsoever." As to other witnesses presented by complainant the court stated: "Other witnesses were so closely related to Viola by blood or marriage that much of their testimony was colored by this fact and their evidence given under oath was exaggerated and stretched to the breaking point." In weighing the evidence the trial justice had the opportunity of seeing and hearing the witnesses. We do not have this opportunity, and where the evidence is conflicting, as in the instant case, and where the trial justice expresses his opinion so strongly as to the credibility of certain witnesses and the probative value of their testimony, his decision should not be disturbed unless it is clearly wrong. From a careful consideration of the transcript we cannot say that the trial justice's decision was clearly wrong.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Carroll & Dwyer, Edward F. J. Dwyer,* for complainant.
*James L. Taft,* for respondent.